Mr. Smith, you have two minutes for rebuttal, so that gives you eight minutes to begin. Thank you, Your Honor. Good morning. May it please the court. I'm Nick Smith for Appellant Giovanni Hernandez-Velazquez, whom I will refer to as GHV, given all the double-barreled surnames in the record here. One way of looking at this case and GHV's errors on appeal is through a formal lens, looking at Rule 32, looking at the Appellate Waiver Rule. I think another insightful way of looking at this case is through natural language and what happened here. We have a defendant who was extradited from his home country in Mexico for a conspiracy charge that began... I'm more of a formalist, so why shouldn't you be bound to an appeal waiver that you negotiated? I think our response to that, Your Honor, is that we are bound to the appeal waiver, and yet it doesn't apply here under this court's precedent of la junesse, which held that this court doesn't apply a formalistic but a flexible analysis... My view is that getting a victim impact statement the night before sentencing is a violation of a fundamental right. It is, Your Honor, because it folds into the fundamental right this court has identified of allocution. GHV did not have an opportunity to properly allocute concerning a central piece of evidence in his sentencing when it was presented to him the night before. But it was also referenced in... I mean, the facts contained in the victim impact statement are also referenced in the pre-sentence report, right? Your Honor, we're actually disputing that. We think that the facts that were referenced in the pre-sentence report were pretty bare bones compared to the fleshed-out facts that are in the victim number six's impact statement. This is the difference, Your Honor, between saying GHV is involved in a crime and GHV did vile and disgusting things to me. GHV brought me to the United States to traffic me. GHV physically abused me in such and such a way. Those facts I've just cited, or alleged facts, are presented to the defendant the night before his sentencing hearing. And, Your Honor, in a system where 95 percent... But if the victim had just come to court, as the victim would have been entitled to do, and spoke in court, that would be permissible on the day of sentencing, right? Well, now, Your Honor, I'm going to be the formalistic one. Because Rule 32 in the precedent applying it says that when there are documents and records that the sentencing court relies upon, the circuits are all agreed that the defendant needs an opportunity to review them and object to them with sufficient time before sentencing to do so on an informed basis. So the courts do seem to be drawing a distinction. I guess I'm challenging your formalism. I mean, the rule says at sentencing, right? Well, Your Honor, I think the circuits have said, including this one in the Chen Chong case, that the documents need to be given to the defendant with a sufficient amount of time to respond to them. So however long this court wants to define that period, it can't be satisfied in a situation where the defendant is being informed in real time, with no opportunity to review the facts before sentencing during the hearing. And it's worse, Your Honor. It's in a language he doesn't understand. In the record to the PSR are that your client, quote, coerced Jane Doe Six into becoming a prostitute. It quotes paragraphs 34 and 38 recites to them to conclude that he had, quote, physically abused Jane Doe Six, forced her to travel to the U.S. against her will. So, Your Honor, you're not disputing that your client didn't notice that, right? Your Honor, we think there's three significant material differences between the facts in the letter that were read to the defendant during the hearing for the first time and the PSR. One is the PSR stated that Jane Doe Number Six agreed to do the work that is involved in this case. The victim letter said that she was coerced into it. The bigger difference, Your Honor, might be an inconsistency that suggests that facts in the victim impact statement are incorrect. The PSR suggests that Jane Doe Six went to the United States by herself at the behest of GHV. The letter states, or strongly implies, that he was with, that GHV was with her in the United States. That is a pretty significant distinction in important facts to learn in the middle of a hearing. And I think this is the kicker, Your Honor. Imagine this was a trial. There would be no dispute that this would be an egregious due process-related error to learn facts like this on the eve of trial. Really? Wait, wait, wait, wait, wait. I mean, so 3,500 material that is handed over the day of a cross is generally permissible. Well, that's not how courts have applied 3,500 rules. And the local rules, the government is required to provide the Jenks material at least two weeks before trial. So this... The statute itself doesn't require that. You're saying now that the Constitution requires more than what the statute requires with respect to... Well, under the Due Process Protections Act, Your Honor, knows that this would probably be an inconsistency like this. And facts like this would be considered Brady. So to produce Brady the night before trial would probably not be proper under... We can get into the due process... I guess what was... What were you prevented from doing by getting this the night before? Your Honor, we were prevented from allocuting on a fact that the judge himself found very important. When we can't, when the defendant can't have a conversation with his lawyer about an important sentencing fact before sentencing, there's all kinds of rights involved. It's not just the right to allocute... But it was produced before sentencing, right? Excuse me, Your Honor? It was produced before the sentence. It was produced the night before sentencing, Your Honor, and I had no opportunity to discuss it with the client before sentencing. None, Your Honor. We asked the judge for a brief recess, 15 minutes, Your Honor, so that we could discuss the letter and have a response to it to the judge before he allocated. We weren't given a short recess. So if this didn't come out in the briefing, that is on me. That is my fault. But I wanted to be clear that there was no opportunity here. But I'm just trying to understand what... So what... If you'd been given the recess or if you were given an adjournment, what would have been done? I would have had an opportunity to discuss with the client whether the facts relied upon by the district court in imposing a sentence were accurate, whether there was inconsistencies between the victim impact statement facts and the facts that were in the PSR. Your Honor, when I said that to the district court, that we needed time to investigate the statements in the letter, the district court suggested investigating facts in a victim impact statement letter would be improper. And inappropriate. It cannot be the case... But this is the material facts that you think really drove the sentence were where your client coerced this woman into engaging in prostitution. That's exactly right, Your Honor. Because with respect to this defendant, there was only two relevant victims, victim one and victim six. Victim one submitted a victim impact statement that did not reference my client at all. The conspiracy began when he was 14 years old. Right. So victim six... The victim number six is the impact statement that he received and heard for the first time in the sentencing hearing. No, but the pre-sentence report references victim six. It references victim six. Well, it represents that your client coerced her into becoming a prostitute and physically abused her by forcing her to travel to the United States against her will. So I guess I'm trying to figure out what's the daylight between what's in the pre-sentence report and what's in the letter that you think really drove this sentence. It's on... We have a series of bullets on page five of our reply brief, but in brief, Your Honor, this is the difference between a bare fact that's necessary to enter a plea under Rule 11 and the whole universe of sentencing facts that courts rely on to impose a sentence. If Your Honor is making the point that the facts with respect to victim impact... victim number six are sufficient to enter a guilty plea, we would not dispute that, Your Honor. But there's a whole world of facts going beyond the bare minimum of the elements of an offense in the PSR that are in this letter. And they clearly had an impact on the judge's reasoning because he says himself, the district court judge, in the hearing, you physically abused victim number six. But that's in the pre-sentence report, which was produced well before the sentence. Your Honor, I don't have the exact line that is in the PSR, but there is a big difference, Your Honor, between facts such as he did vile and disgusting things to me. He came with me to the United States when that's inconsistent with a fact in a PSR. This is a situation where there are no other facts presented to the judge, basically, about this case, except for those in a victim impact letter that was received the night before sentencing. Can you point us to where in the sentencing transcript the district judge you believe is relying on the letter? Yes, Your Honor. It's at appendix number 14, where the district judge receives the letter into evidence and reads it into the record because it's a factor in sentencing. So would you have preferred he not read it into the record with the assistance of the interpreter so that your client had no notice of it? Your Honor, that might sound strange, but that's exactly our position. Our position was he could either... I hear that what you're saying is the fact that he read it into the record, is that it? Is there somewhere else in the transcript that I will find that the district court relied upon the letter as opposed to the PSR allegations about victim six in determining the sentence? At appendix number 35, the court observes that the seriousness of GHV's offense turned in part on the fact that he, quote, physically beat Jane Doe number six. That's in the PSR. Physically beat, Your Honor? It says, quote, physically beat. Paragraph 34 of the PSR. GHV, quote, frequently physically beat Jane Doe number six. Including by punching and kicking her. Your Honor, I think the point here is that sometimes you cannot distinguish at this level of abstraction between a fact, a specific fact, and a general statement. But the point is that when the court could either adjourn sentencing or provide a recess or rely on this or use this statement... I agree an adjournment was probably appropriate. What I'm trying to... Again, what we're trying to determine, if we believe that harmless error applies here, if we believe that your client is required to show prejudice, which I think you're saying he's not, but if we think that your client is required to show prejudice by the consideration of this letter, that's why I'm looking for you to point to me how we know that this came into the district court's evaluation. And what you've given me is the fact that he read it into the record and the fact that he referred to physical abuse. Is there anything else? Your Honor, I think this is exactly the issue in the Chen Chung case where this circuit agreed there was error in that case because relying on the district court statement that it used the letter that was not produced, the victim impact letter that was not produced to the defendant... And where's that statement here? Your Honor, by reading it into the record, there's no other purpose... So the fact that it exists means that the district court relied on it. If it's being read... My understanding, Your Honor, is that if the letter is being... A piece of evidence is being read into the record and accepted into evidence for sentencing, that is use. If it's not use, what else would it be read into the record for? And I think I heard Judge Sullivan say, well, would the defendant have preferred to not receive the letter? Well, the defendant can receive the letter without it being read into evidence. And, Your Honor, I think this is a very graphic letter, which is describing striking facts. To read this aloud, if you're the sentencing court, and then to sort of separate it out and to say that it wasn't relied on, I think is kind of unrealistic. So I just very briefly, I know I'm over my time, but if I may, I'd just like a moment to discuss the other procedural error we've identified here, which is an error in the unwarranted sentence disparity analysis. I take the government's point that the district court judge was not required under the circuit's rules to conduct a disparity analysis with respect to co-defendants. And yet the district court did. That was apparently the basis of the sentence of 17.5 years. And it's clear that the judge was making a mistake here. The judge said that the government had likened, which means equates synonymously, GHV's conduct with his brother Ernesto. Then the court observed... But this really came up, it seems to me, you brought this up by saying that to sentence him to more time in prison that his sister would be an unwarranted sentencing disparity. And then the judge after that basically concluded, well, your client's very different from the sister, if anything, is more like the brother. Your Honor, in our sentencing submission, we said that he is the least culpable of all the defendants because he was 14 years old when his old three older siblings started the conspiracy. The government agreed in the sentencing hearing that his culpability is mitigating compared to his brothers, plural, Ernesto and Hugo. The government says that to the court, and then the court says the government has likened GHV's conduct to that of his brother Ernesto, whom I recently sentenced to 210 months of incarceration. And therefore, and then the judge sentences GHV to 210 months. But the government had never likened or equated GHV's culpability to that of his brothers. It was exactly the opposite. The government had just said his role was mitigating. Then after this sentencing hearing, the judge imposes a substantially lower sentence on one of the ringleaders of the conspiracy, 188 months for Hugo, whom all of the siblings said was more culpable than the youngest brother, GHV. That is an error of fact, and it is a proper procedural error to raise. And I think that the only sort of substantive response that the government has given on this point is that the judge was not required to conduct that kind of disparity analysis. But he did. The district court did. Well, it seems to me what the district court was saying was that your client had engaged in violence, which the sister hadn't, and the brother, Ernesto in particular, had also engaged in violence against the women who were working as prostitutes. That seems to be the extent of the comparison. No, Your Honor, the judge was saying, the judge quoted his sentence in the Ernesto. The quote was at Appendix 44, the government likens GHV's offensive conduct to his brother, Ernesto, whom the court recently sentenced to 210 months of incarceration. But moments earlier, the government had said, GH, we agree with the defense that GHV's role was mitigating relative to his brother's. So if it's, if that, if that. What the judge was saying was that your client's conduct was more closely resembled that of his brother than of his sister. But that's not, well. Well, and it's true to the extent that the brothers engaged in violence against these individuals, the victims, and the sister did not. The sister did not, Your Honor, but to say that, what the government's position was that GHV is closer to his brothers than to the conduct of his sister. But that's not the same as equating the conduct of the younger brother with his older brothers. And there was no, there's no debate that the older brothers were engaged in more serious, repeated, severe conduct with more victims. I think, Judge, I keep stressing this, but it's extremely important that there's only two victims in GHV's case. One did not reference GHV at all. And we show that the PSR says that GHV was between 14 and 17 and 18 when the conduct related to that victim. Number one occurred. There's only one victim that's referring to GHV, and we received the facts about it the night before sentencing. Your Honor, I'm way over. You received the victim impact statement the night before sentencing. You had facts about victim six before the sentencing. That's in the pre-sentence report. That's true, Your Honor. That is true. All right, well, you've reserved two minutes for rebuttal. Thank you. But we'll now hear from Ms. Reed for the government. Thank you, Your Honor. May it please the court, Assistant United States Attorney Erin Reed for the government. I represented the government in the district court. This appeal is barred by the appeal waiver and the defendant's plea agreement, which this court should uphold. The defendant accepted that knowingly and voluntarily, and he received a full and fair sentencing hearing with no violation of any fundamental right. This court has always held that appeal waivers are presumptively enforceable, and none of the limited exceptions to enforcing an appeal waiver apply here. This sentencing was not based on any constitutionally impermissible factor. The court did not abdicate its responsibilities. There was simply nothing that led to the sentence being reached in a manner that the plea agreement did not anticipate. And even if this court were to find that the decision to deny the request for an adjournment to investigate the Jane Doe six letter was error, which the government submits that it was not, that would be more like the non-prejudicial procedural errors for which this court has always enforced appeal waivers, like in Busserath and Arevelo. In this case, none of the exceptions to the appeal waiver apply, and the court should uphold that waiver. The court also did not abuse its discretion in denying the request to adjourn the sentencing to invest, investigate the victim impact statement of Jane Doe six. Consistent with rule 32 and due process, the defendant received notice of the victim impact statement's facts. He was on notice of those, and he received the statement before the hearing, and crucially it was read to him and translated for him in real time at the hearing, and then he had the opportunity to comment. So let me pause you there for a moment. He had the opportunity to comment, but in between the reading and the commenting, it seems to me there is a potentially a difference between actually adjourning the hearing, saying we'll come back in a week, and giving counsel 15 minutes to talk to the client, and that also didn't happen, right? And so what I'm trying to understand is did he have a meaningful opportunity to address the victim statement when he was not able to consult with counsel prior to being asked to allocate a sentencing? Yes, Your Honor. In this case, I submit that he did. First of all, he was on notice of those statements, and none of the facts. None of the specific statements, right? He was on notice generally, but this specific statement, to the extent he had the, you've just said he had the, he was given the ability to comment on it. Is that a meaningful ability, and is it complete with his right to counsel if he's not given, you know, a 10-minute sidebar to, you know, to talk to his lawyer before he makes his statement? Your Honor, I submit that what was required under the rule is what was given. It was meaningful. It was read to him aloud. He had time to process it. The court said- What if he wondered what was the right thing to do? Should, you know, to your lawyers, should I comment on this? Should I, you know, I don't think this is accurate. Should I push back on it? How does he know whether to do those things without asking his lawyer? Well, in this case, first of all, Your Honor, he was on notice of the facts. So if there was a fact that he found was different, for example, counsel pointed out the travel to Atlanta. Right. The PSR was very clear that he did not, the defendant did not travel to Atlanta. And the district court pointed that out. The district court said to counsel, you can traffic someone, especially in a conspiracy like this, when you're not with them. So how does the client know in that circumstance whether he should say to the judge, Judge, you know, I have admitted, I've pled guilty to the terrible things I did to this victim. But, you know, her version of this is not entirely accurate. And that's an important strategic decision in sentencing. How does the defendant make that decision about whether to push back on this Atlanta question, who traveled when with whom, without consulting counsel? Well, Your Honor, first of all, I would say that he, in this case, had all of the facts. And that keeps being the response you're giving me. But then we, then you just pointed out that there is at least this one. We all agree, right? There is this difference between the PSR and the letter on the question of who traveled with whom. I don't agree, Your Honor. I thought you just said that. No, no, I disagree that there is a difference. I believe that the letter is clear that she traveled to Atlanta by herself. And the PSR said that. And that's the fact that the district court relied on. That's very clear. The fact that he was abusive and coercive to her is also in the PSR, as the court previously pointed out to counsel. The fact that she found his conduct to be vile, the impact on her, that, of course, was somewhat new. The PSR didn't have her feelings about what happened to her, the trauma on her. But I don't believe that there's anything in this court's rulings previously or in Rule 32 that entitles the defendant to time or the ability to investigate a victim's impact or her opinion about what happened to her, the trauma on her, the facts were given to him. And even if they hadn't been, as Judge Sullivan pointed out, the rule requires notice and the opportunity to comment. Victims can come into court and speak their truth. That is entirely appropriate and allowed under this court's rulings. And if that had happened here and there had been no previous letter submitted, that would still have been appropriate. But in this case, the letter was provided and the facts were materially identical to the PSR. And also, Your Honors, the district court did not rely on the letter. The facts that it relies on in its reasoning for this sentence are from the PSR, from the arguments of counsel, probation. The court goes through those, and this is at 30 and 31 of the record of A31. He's citing to the PSR the defendant, he says, together with his brother Hugo, forced Jane Doe 1 to keep working as a prostitute by going to her mother's home and kidnapping her son for a day. By the way, that happened after the defendant had turned 18, between 2005 and 2007. That's in PSR paragraph 19. The defendant also coerced Jane Doe 6 into becoming a prostitute, paragraph 34 of the PSR. He goes on to say that he beat her, including by punching and kicking her. He goes on to say that when she came to the U.S. and she was stopped at the border, he told her she had no choice to go back, and she was afraid of him. All of that is also from the PSR. He's not citing to the letter, and there's no reasonable probability that if the court had granted an adjournment, the sentencing would have come out any different in this case. There simply was no error here, and this is an effort to get around the appeal waiver, but the court should not invalidate that waiver. On the sentencing disparities, the district court simply did not err. There was no mistake of fact, and again, the defendant is trying to circumvent a valid appeal waiver by couching it in constitutional terms that simply don't apply. Counsel noted that the district court said the government likens the defendant's conduct to that of his brother Ernesto. What he did not read was the next sentence on A44. It says that at the government's sentencing letter, page five. That's a quote from the district court. And the government's sentencing letter, in fact, said exactly what the district court quoted. It said the defendant's conduct is closer to that of his brother Ernesto, who pled guilty to sex trafficking, and whom the court recently sentenced to 210 months. The court was quoting from the government's letter, and the fact that the government at the beginning of its oral remarks talked about the fact that it found the defendant's age at the beginning of the conspiracy to be mitigating does not change the fact that it wrote that in the letter or that it went on for five paragraphs at the sentencing to talk about the egregiousness of the defendant's conduct, to talk about kidnapping Jane Doe 1's son, Jane Doe 1's son, about his violence to Jane Doe 6, and to go on to outline the differences between him and his sister, the fact that she was not violent with any victim, and that she pled to a different crime. There was no mistake of fact here. Instead, the court specifically mentioned the need to avoid sentencing disparities, weighed the arguments of both sides, weighed the facts, and there were certainly facts that he relied on that were appropriate to impose this sentence. And the defendant's dispute with the manner in which the court weighed those facts does not give rise to an error, and it does not mean that this court should invalidate the appeal waiver. Finally, counsel, in his opening brief, asked for reassignment if this court were to find there was error in remand. That is not appropriate here. There's simply no reason to have that extraordinary measure in this case. There's no argument, really, and no fact to support the district court harboring any actual prejudice to the defendant. There's simply nothing that would make reassignment necessary here. Unless the court has any further questions, I request that the court affirm the judgment of the district court. Thank you. Well, affirm the judgment, or you're asking us to dismiss the appeal? And dismiss the appeal, yes, Your Honors. All right. Mr. Smith, you have two minutes for rebuttal. Thank you, Judge. Very briefly, I was asked previously whether there was any substantial right here, much less a constitutional right. As was just noted, the defendant did not have an opportunity to discuss a matter during sentencing on the attorney's request at all. This is structural error. Under Gonzalez-Lopez, a defendant has a right to a counsel of choice to discuss, to effective assistance of counsel. He was given no opportunity at all to discuss, even for 15 minutes, to discuss a fact that was read into the record and that the court didn't... A fact that was read into the record? Facts. The letter that was read into the record. In no part of the sentencing transcript, does the district judge indicate he did not rely on that statement? All we have is the bare fact that this statement was admitted into evidence, as it were, at sentencing. But your argument in your brief on appeal is not about structural or fundamental error. It's about Rule 32. We raised the Sixth Amendment issue, Your Honor, through the mechanism of Rule 32-I-4, which states that the defendant needs an opportunity to discuss matters with counsel and have counsel speak for the defendant at sentencing. And finally, Your Honor, there's one point that was raised in the opening brief that I didn't mention. Consistently throughout this sentencing hearing, the district judge barred defense counsel from making objections, from speaking. There was a large amount of sarcasm directed towards the defendant, calling him an august personage who was standing on, implying that he was standing on his rights improperly. The entire tone of the proceeding was sarcastic. This was a sentencing hearing where someone was sent to prison for 17 and a half years, Your Honors. The tone of this proceeding alone was like nothing I've ever seen for any type of sentencing. This is a person who does not speak English and was being translated to him. He was extradited from his own country to face justice in this country for an offense that began when he was 14 years old. When the proceeding opened, his lawyer was virtually shouted down and told he was going to be sanctioned for trying to explain that we didn't have an opportunity to discuss these facts we had just received before the sentencing hearing. We can look at this through Rule 32 or you can look at it on the face of what it is and what it looks like. We didn't have an opportunity to talk before the sentencing hearing. And Your Honors, when I went back to speak to GHB afterwards, he told me there were facts in this victim impact statement that were not accurate. There appeared to be inconsistencies between this and the PSR, which was bare bones. So Your Honors, I just submit that if this is due process, if this is an opportunity to confer with counsel before a 17.5-year sentence, I struggle to understand what wouldn't be. Thank you. All right. Thank you. We will reserve decision.